**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DONNA ZIMBLER, | ) | NO. CV 13-4635-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **AND ORDER OF REMAND** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

    Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
HEREBY ORDERED that Plaintiff's and Defendant's motions for summary
judgment are denied and this matter is remanded for further
administrative action consistent with this Opinion.


                            **PROCEEDINGS**


    Plaintiff filed a complaint on July 2, 2013, seeking review of
the Commissioner's denial of disability benefits.  The parties filed a
consent to proceed before a United States Magistrate Judge on
August 2, 2013.  Plaintiff filed an "Amended: Motion for Summary

1  Judgment or Remand" on May 14, 2014.  Defendant filed a "Memorandum in
2  Support of Defendant's Answer" (which the Court construes as
3  Defendant's cross-motion for summary judgment) on June 6, 2014.  The
4  Court has taken the motions under submission without oral argument.
5  See L.R. 7-15; Minute Order, filed July 3, 2013.

6

7                **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

8

9       Plaintiff, born November 4, 1956, has never worked outside the
10  home (Administrative Record ("A.R.") 24, 49, 128).  Plaintiff also
11  reportedly has never done any significant work inside the home (A.R.
12  55, 57, 63-64).  Plaintiff lived with her parents until her parents
13  passed away, and now lives with her brother (A.R. 48, 50, 53).
14  Plaintiff suffers from "Noonan's syndrome," a genetic condition
15  affecting multiple aspects of development and function (A.R. 18-19,
16  203, 207, 282-83; see Jane Doe/09 v. Secretary, 2007 WL 5172427, at *1
17  n.8 (Fed. Cl. Nov. 21, 2007)).  Plaintiff would be entitled to the
18  "Child's Insurance Benefits" she seeks only if she was disabled before
19  November 4, 1978, the date she reached the age of 22 (A.R. 16).  See
20  42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a); Phothikham v.
21  Colvin, 2014 WL 346653, at *1 n.1 (C.D. Cal. Jan. 30, 2014).

22

23       Within the medical evidence in the Administrative Record is a
24  1975 "Psychological Evaluation" by Dr. Karol Fishler, an examining
25  clinical psychologist (A.R. 197-98).  Dr. Fishler described Plaintiff
26  as a "virtually pre-adolescent child" who scored as an 11 year old on
27  the "Vineland Social Maturity Scale" and exhibited a "maturational
28  level in some of these skills . . . at less than 8-year level" (A.R.

197-98).[1]  According to Dr. Fishler, Plaintiff then had "poor self-image and makes no attempt or minimal effort to assert herself. Generally, she avoids any competitive situations and tends to withdraw when facing pressure arousing situations. . . .  This responsive, 18-5 year old adolescent girl presents [a] confusing picture because of many inconsistencies and wide scatter of her achievements.  She may be viewed as [a] child with multiple physical problems and congenital anomalies . . ." (A.R. 197-98).  Under "Recommendations," Dr. Fishler stated: "Because of the complexity of the problems presented no concrete suggestions may be offered in the direction of vocational training. . . .  She is obviously too bright for a sheltered workshop placement. . . .  A possibility of some 'practical' on the job training around people (e.g. MacDonald clerkship) with some supervision may be explored. . . .  A possibility of a Summer Camp or other supervised group activity for physically disabled should be explored" (A.R. 198).

In a cover letter dated five days after the "Psychological Evaluation," Dr. Fishler wrote that there was "a significant emotional overlay reflected in [Plaintiff's] limited capacity for social interaction and her strong feeling of personal inadequacy.  It is not surprising that her small stature and multiplicity of physical limitations contribute to her emotional problem and her tendency to withdraw in social situations" (A.R. 204).

_____

[1]    A claimant's level of social maturity can be relevant to the disability analysis.  See, e.g., Loveless v. Astrue, 2012 WL 775105, at *27 (D. Or. Jan. 23, 2012), adopted, 2012 WL 775080 (D. Or. March 8, 2012).

1    Notwithstanding Dr. Fishler's 1975 opinions, the ALJ found that,

2    prior to November 4, 1978, Plaintiff had no severe non-exertional

3    limitation and at that time could have performed the full range of

4    sedentary work (A.R. 18-24).  The ALJ claimed that "Dr. Fishler

5    recommended that [Plaintiff] enter the workforce at age 18, without

6    any mention of specific restrictions" (A.R. 23).  In denying benefits,

7    the ALJ applied the Medical-Vocational Guidelines ("the Grids"), and

8    did not consult a vocational expert (A.R. 24).  The Appeals Council

9    denied review (A.R. 5-7).

10

11                        **STANDARD OF REVIEW**

12

13    Under 42 U.S.C. section 405(g), this Court reviews the

14    Administration's decision to determine if: (1) the Administration's

15    findings are supported by substantial evidence; and (2) the

16    Administration used correct legal standards.  See Carmickle v.

17    Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

18    499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner

19    of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).

20    Substantial evidence is "such relevant evidence as a reasonable mind

21    might accept as adequate to support a conclusion."  Richardson v.

22    Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted);

23    see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

24

25                          **DISCUSSION**

26

27    The Administration materially erred in connection with the

28    evaluation of Plaintiff's pre-age 22 non-exertional impairments and

                                      4

1  limitations.   Remand is appropriate.

2

3      Substantial evidence does not support the ALJ's determination

4  that, at age 22, Plaintiff had no severe or significant non-exertional

5  impairment or limitation.   Social Security Ruling ("SSR") 85-28[2]

6  governs the evaluation of whether an alleged impairment is "severe":

7

8      An impairment or combination of impairments is found "not

9      severe" . . . when medical evidence establishes only a

10     slight abnormality or a combination of slight abnormalities

11     which would have no more than a minimal effect on an

12     individual's ability to work . . . i.e., the person's

13     impairment(s) has no more than a minimal effect on his or

14     her physical or mental ability(ies) to perform basic work

15     activities. . . .

16

17     Great care should be exercised in applying the not severe

18     impairment concept.   If an adjudicator is unable to

19     determine clearly the effect of an impairment or combination

20     of impairments on the individual's ability to do basic work

21     activities, the sequential evaluation process should not end

22     with the not severe evaluation step.

23

24     If such a finding [of non-severity] is not clearly

25     established by medical evidence, however, adjudication must

26  _____

27      [2]   Social Security rulings are binding on the
    Administration.   See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1
28  (9th Cir. 1990).

1    continue through the sequential evaluation process.  SSR

2    85-28 at 22-23.

3

4    See also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (the

5    severity concept is "a de minimis screening device to dispose of

6    groundless claims"); accord Webb v. Barnhart, 433 F.3d 683, 686-87

7    (9th Cir. 2005).

8

9        In the present case, the medical evidence does not "clearly

10   establish[ ]" the non-severity of Plaintiff's pre-age 22 non-

11   exertional social and emotional problems.  Rather, Dr. Fishler's

12   "Psychological Evaluation" appears to evidence profound non-exertional

13   problems causing more than "minimal" effects on Plaintiff's ability to

14   perform work activities.[3]  Yet, the ALJ not only found any and all

15   pre-age 22 social and emotional problems non-severe, but also found

16   that Plaintiff retained an unlimited non-exertional residual

17   functional capacity.  These findings violated SSR 85-28 and the Ninth

18   Circuit authorities cited above.

19

20       The ALJ also appears to have erred in failing to consult a

21   vocational expert.  Where a claimant's non-exertional impairments

22   significantly limit his or her range of work "the grids do not apply,

23   and the testimony of a vocational expert is required to identify

24   specific jobs within the claimant's abilities."  Polny v. Bowen, 864

25

26   _____

27       [3]     Although Dr. Fishler's recommendations may have been
     somewhat ambiguous, Dr. Fishler did not, as claimed by the ALJ,
28   recommend that Plaintiff "enter the workforce at age 18, without
     any mention of specific restrictions."

F.2d 661, 663-64 (9th Cir. 1988); see Burkhart v. Bowen, 856 F.2d 1335, 1340-41 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999) ("the grids should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the grids").  The Administration did not consult a vocational expert in Plaintiff's case.

Our circuit has clearly delineated when it is appropriate for the Commissioner to rely on the grids when meeting the burden under Step Five of the five-part disability inquiry. We have held that [t]he Commissioner's need for efficiency justifies use of the grids at step five but only when the grids "*completely* and *accurately* represent a claimant's limitations. . . .  In other words, a claimant must be able to perform the full range of jobs in a given category in order for the commissioner to appropriately rely on the grids. . . .

We have also held that significant non-exertional impairments . . . may make reliance on the grids inappropriate. . . .  A non-exertional impairment is an impairment that limits the claimant's ability to work without directly affecting his [or her] strength.

Bruton v. Massanari, 268 F.3d 824, 827-28 (9th Cir. 2001) (citations and quotations omitted).

///

1    As discussed above, the evidence does not clearly establish the

2    non-severity of Plaintiff's pre-age 22 non-exertional impairments.

3    Rather, these impairments appear to have been significantly limiting.

4    Thus, it appears that the ALJ should not have placed exclusive

5    reliance on the Grids.

6

7    The Court is unable to deem the above-discussed errors to have

8    been harmless.  See generally, McLeod v. Astrue, 640 F.3d 881, 888

9    (9th Cir. 2011).  Because the circumstances of this case suggest that

10   further administrative review could remedy the ALJ's errors, remand is

11   appropriate.  Id. at 888; see generally INS v. Ventura, 537 U.S. 12,

12   16 (2002) (upon reversal of an administrative determination, the

13   proper course is remand for additional agency investigation or

14   explanation, except in rare circumstances).

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

For all of the foregoing reasons,[4] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 10, 2014.


_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[4]      The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.